IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYNTHA CHAFFEE and<br>PETER CHAFFEE<br><br>                    *Plaintiffs,*<br><br>    -- against --<br><br>MICHAEL FARBER;<br>HEIBERGER & ASSOCIATES, P.C.;<br>ROBERT C. EHRLICH and<br>DANIELS, NORELLI, SCULLY & CECERE, P.C.<br><br>                    *Defendants.* | Civil Action No. 15CV4262 VEC<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Cynthia Chaffee and Peter Chaffee by their attorneys at Manhattan Legal Services, for their Complaint against Defendants Michael Farber, Heiberger & Associates, P.C., Robert C. Ehrlich, and Daniels, Norelli, Scully & Cecere, P.C. allege as follows:

### PRELIMINARY STATEMENT

1.      Plaintiffs bring this action for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692, *et seq.,* which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices, the New York Consumer Protection Act (hereinafter "NYCPA"), N.Y. General Business Law § 349, *et seq.,* which prohibits deceptive acts or practices in the conduct of any business in New York State and the New York Judiciary Law §487 (hereinafter "NYJL") which prohibits attorneys from engaging in misrepresentations intended to deceive the court or any party.

2.      Plaintiffs Cynthia Chaffee and Peter Chaffee (hereinafter "the Chaffees") are sixty-three and seventy-three years old respectively; Cynthia Chaffee is disabled.

3.      The Chaffees are holders of a federal Section 8 voucher administered by the New York City Housing Authority (hereinafter "NYCHA") which limits their rental obligation to approximately thirty percent of their income;  the balance of their rent is paid by the Section 8 rental subsidy.

4.      Section 8 regulations and the consent decree entered into in Deirdre Williams v. New York City Housing Auth. (S.D.N.Y. Index No. 81-cv-1801) prohibit a landlord from collecting the Section 8 subsidy portion of the rent from the tenant when the Section 8 subsidy is suspended for a landlord's failure to maintain housing quality standards (hereinafter "HQS") or to correct HQS violations.

5.      In April 2013, NYCHA suspended payment of the Chaffees' Section 8 subsidy when their apartment failed its annual HQS inspection and the landlord failed to make the necessary repairs.

6.      In June 2014, Defendant Michael Farber (hereinafter "Farber") filed a nonpayment proceeding against the Chaffees in housing court on behalf of their landlord, seeking to recover the Section 8 portion of the rent from them in violation of the Williams consent decree and New York State law.

7.      Defendants Heiberger & Associates P.C. (hereinafter "Heiberger"); Robert C. Ehrlich (hereinafter "Ehrlich"), a partner at Heiberger; and Daniels, Norell,i Scully & Cecere, P.C. (hereinafter "Daniels") appeared of counsel to Farber and litigated the nonpayment proceeding in housing court on behalf of the Chaffees' landlord.

8.      Although the Chaffees presented documentary evidence that the rent arrears claimed in the petition resulted from the suspension of the Section 8 subsidy due to their landlord's failure to make repairs and the landlord's own rent ledger showed that the Chaffees

2

were current in their share of the rent, defendants litigated the nonpayment proceeding for over ten months until the court dismissed the landlord's case with prejudice because the Chaffees did not owe the arrears.

9.     Defendants Farber, Heiberger, Ehrlich and Daniels violated the FDCPA and the NYCPA by making false representations in verbal and written communications that the Chaffees owed rent when their account was current, by threatening them with eviction if they did not pay the Section 8 portion of the rent which they did not owe; and by filing and/or litigating a frivolous nonpayment proceeding against the Chaffees.

10.     Defendants Farber, Heiberger and Ehrlich violated the NYJL by making false representations to the court and to the Chaffees that they owed the Section 8 subsidy portion of the rent.

11.     The Chaffees seek an injunction barring Farber, Heiberger, Ehrlich and Daniels from engaging in such deceptive acts and practices, to recover statutory damages, costs and attorney's fees, the assessment of civil penalties against all defendants under the FDCPA and the NYCPA and treble damages from Farber, Heiberger and Ehrlich for intentionally deceiving the court in violation of the NYJL.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k(d), and 28 U.S.C. §1331.

13.     This Court has supplemental jurisdiction over Plaintiffs' claims under the NYCPA (GBL § 349) and NYJL pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with the federal claim and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

14.     Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

15.     Venue in this district is proper under 28 U.S.C. § 1391(b) because the Defendants transact business here and some of the conduct complained of occurred here.

## PARTIES

16.     The Chaffees are natural individuals who live at 346 E. 18th St., Apt. 3B in New York County.

17.     The Chaffees are consumers as defined by 15 U.S.C. § 1692a(3).

18.     Farber is an attorney who regularly engages in the business of collecting debts by filing and litigating civil law suits for nonpayment of rent on behalf of his clients, including the Chaffees' landlord M & E 336-348 East 18th St. LLC (hereinafter "Chaffees' landlord").

19.     Farber collects debts from housing consumers by using the mail to send court papers.

20.     Farber is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

21.     Farber maintains his office at 137 Central Park North, New York, NY 10026.

22.     Heiberger is a New York professional corporation with a principal place of business at 589 Eighth Avenue, 10th Fl, New York, NY 10018.

23.     Heiberger is a law firm regularly engaged in the business of collecting debts by filing and litigating civil law suits for nonpayment of rent on behalf of its clients, most of whom are landlords.

24.     Heiberger collects debts from housing consumers by using the mail to send court papers.

25.     Heiberger is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

26.     Ehrlich is an attorney partner at Heiberger & Associates, P.C., with a principal place of business at 589 Eighth Ave., 10th Fl., New York, NY 10018.

27.     Ehrlich regularly engages in the business of collecting debts by filing and litigating civil law suits for nonpayment of rent on behalf of Heiberger's clients, most of whom are landlords.

28.     Ehrlich collects debts from housing consumers by using the mail to send court papers.

29.     Ehrlich is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

30.     Daniels is a New York professional corporation with a principal place of business at 1 Old Country Rd, Suite LL5, Carle Place, NY 11514.

31.     Daniels is a law firm regularly engaged in the business of collecting debts by filing and litigating civil law suits for nonpayment of rent on behalf of its clients, most of whom are landlords.

32.     Daniels collects debts from housing consumers by using the mail to send court papers.

33.     Daniels is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

34.     All defendants transact business in the Southern District of New York.

## STATUTORY FRAME WORK

### The Fair Debt Collection Practices Act

35.     Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

36.     Under the FDCPA, "a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

37.     Prohibited conduct in violation of this section includes, but is not limited to:

    a.   "The false representation or implication of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

    b.   "The threat to take any legal action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

    c.   "Communicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C. § 1692e(8).

    d.   "The use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

38.     A debt collector is further prohibited from the "use of unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

39.     Prohibited conduct in violation of this section includes, but is not limited to, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692p(f)(1).

40.     In addition, a debt collector may not "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

41.     Consumers may recover $1,000 in statutory damages and actual damages from a debt collector violating the above provisions of the FDCPA. 15 U.S.C. § 1692k(a)(2)(A).

42.     In a successful action, an individual may recover costs and reasonable attorney's fees as determined by the court.  15 U.S.C. § 1692k(a)(3).

## The New York Consumer Protection Act

43.     New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law § 349(a).

44.     An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349.

45.     The damages award may be increased to an amount not to exceed three times the actual damages up to $1,000 if a court finds the defendant willfully or knowingly violated this section. N.Y. Gen. Bus. Law § 349h.

46.     Under GBL § 349c, the court may assess additional civil penalties in the amount of  $10,000.00 for deceptive conduct where the defendant knew its conduct was directed towards an elderly person and willfully disregarded the rights of the elderly person or where the elderly person suffered physical, emotional or economic damage from the defendants' conduct.

## New York Judiciary Law Section 487

47.     New York Judiciary Law §487 (hereinafter "NYJL") creates a private right of action against any attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party. " N.Y. Jud. Law § 487.

48.    Any such attorney or counselor "forfeits to the party injured treble damages, to be recovered in a civil action."  N.Y. Jud. Law § 487.

**Section 8 Tenant Based Assistance:  Housing Choice Voucher Program**

49.    Congress enacted the United States Housing Act of 1937 ("The Act") "to remedy the unsafe and unsanitary conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income." 42 U.S.C. § 1437.

50.    Section 8 of the Act, added in 1974, authorizes the Secretary of Housing and Urban Development (hereinafter "HUD") to enter into annual contributions contracts with public housing agencies (hereinafter "PHAs").  Such agencies may enter into contracts to make assistance payments to owners of existing dwelling units.  42 U.S.C. § 1437f(b)(1).

51.    Under the federal regulations governing the Section 8 program, an owner who has a contract with a PHA must maintain the unit in accordance with Housing Quality Standards (hereinafter "HQS") defined by 24 C.F.R § 982.404.

52.    The PHA must inspect the unit to determine if it meets the HQS.  24 C.F.R. § 982.405.

53.    The PHA is prohibited from making "any housing assistance payments for a dwelling unit that fails to meet the HQS, unless the owner corrects the defect …"  24 C.F.R. §982.40.

54.    A PHA's failure to pay the landlord any of the subsidy portion of the rent because the unit fails to meet the HQS does not constitute a violation of the lease between the landlord and tenant and thus does not constitute grounds for eviction.  24 C.F.R. § 982.310(b).

55.    The Second Partial Consent Judgment entered into in Dierdre Williams v. New York City Housing Auth. (S.D.N.Y. Index No. 81-cv-1801) (hereinafter "Williams Judgment")

imposes further requirements on Section 8 landlords seeking to evict Section 8 tenants who hold vouchers administered by New York City Housing Authority (hereinafter "NYCHA").

56.     The <u>Williams</u> Judgment, in relevant part, specifically prohibits a Section 8 landlord from maintaining, "[a] proceeding that seeks a judgment against the tenant for the subsidy portion of the rent."  Consent Judgment ¶ 10.

### FACTS RELATED TO THIS COMPLAINT

53.     The Chaffees live in a rent stabilized apartment at 346 E. 18th St., Apt. 3B, New York, NY, a building owned and operated by M & E 336-348 East 18th St., LLC, the Chaffees' landlord.

54.     Cynthia Chaffee is sixty-three years old and disabled.

55.     Peter Chaffee is seventy-three years old.

56.     Prior to 2008, Peter Chaffee received a Senior Citizen Rent Increase Exemption (hereinafter "SCRIE").

57.     Under the SCRIE program, the rent of eligible senior citizens is frozen as a of the effective date of the approval and all future rent increases are paid to the landlord by the City of New York in the form of a tax abatement credit.

58.     The Chaffees' landlord had notice that Peter Chaffee is a senior citizen through his participation in the SCRIE program.

59.     Upon information and belief, all defendants in this action had notice of Mr. Chaffee's senior citizen status through business records they received from the Chaffees' landlord showing the Chaffees had received a SCRIE prior to 2008, as well as through personal contacts with Mr. Chaffee during court proceedings.

*The Suspension of the Chaffees' Section 8 subsidy*

60.     Since 2008, the Chaffees have been participants in the federal Section 8 housing choice voucher program administered by NYCHA.

61.     Under the Section 8 program, the Chaffees' share of the rent is limited to approximately thirty percent of their income and the Section 8 program pays the difference between their share of the rent and the legal rent for the apartment.

62.     At all times relevant to the complaint, the Chaffees' rent share was $220.00 per month.

63.     Pursuant to Section 8 regulations, apartments are inspected on an annual basis to make sure that they are in compliance with the Section 8 program's Housing Quality Standards (hereinafter "HQS").

64.     On April 17, 2013, the Chaffees' apartment failed the annual NYCHA HQS inspection.

65.     By notice dated April 18, 2013, NYCHA notified the Chaffees' landlord that it had found serious HQS violations including "severe damaged/cracked wall," "severe mildew/mold on the wall trim," and "severe cracked or damaged wall in the living room."

66.     The notice further informed the landlord that failing to complete the repairs within thirty days after the inspection would result in suspension of the Section 8 subsidy and that NYCHA would not reinstate the subsidy until the apartment had been re-inspected and the inspection found no HQS violations.

67.     By letter dated April 18, 2013, NYCHA informed the Chaffees that NYCHA would suspend the payment of their rental subsidy if the landlord did not make repairs and

further informed them that if NYCHA suspended the subsidy, the Chaffees would be responsible only for their portion of the rent, not the subsidy portion.

68.     In or about May 2013, NYCHA suspended the Section 8 subsidy payment to the Chaffees' landlord because the landlord failed to make necessary repairs to the apartment.

69.     In December 2013, NYCHA sent a letter to the Chaffees' landlord advising it that the subsidy had been terminated because of a "long-term suspension."

70.     Under Section 8 regulations, a Section 8 tenant does not become liable to the owner for the Section 8 portion of the rent if the subsidy is terminated as a result of the owner's failure to make repairs.

### The Meritless Nonpayment Proceeding against the Chaffees

71.     In June 2014, Farber commenced a summary proceeding against the Chaffees to evict them for nonpayment of rent.

72.     According to the petition, dated June 2, 2014, the landlord sought to recover $807.74 in monthly rent from the Chaffees for the months of February 2014 through June 2014 and a balance of rent of $211.48 for January 2014.

73.     At the time Farber filed the nonpayment, the Chaffees' rental obligation pursuant to their Section 8 voucher was $220.00 per month rather than the $807.74 claimed in the petition and they had paid their share of the rent in full for each month in which the petition claimed arrears were owed.

74.     Farber did not serve the Chaffees with the notice required by FDCPA 1692g(a) at any time.

75.     Farber verified the petition upon information and belief and stated that he did so based on "statements and/or record[sic] provided by the petitioners, its agents and/or employees and contained in the file in the attorney's office."

76.     Upon information and belief, Farber shared an office with the landlord at the time he prepared the petition and therefore had easy access to the landlord's files.

77.     Upon information and belief, Farber had access to rent ledgers maintained by the owner which showed that the Chaffees had paid their share of the rent prior to filing the petition.

78.     Farber knew or should have known that the Chaffees held a Section 8 voucher and that the Chaffees had paid their share of the rent in full each and every month alleged in the non-payment petition.

79.     Farber made false representations that the Chaffees owed the debt in the nonpayment petition he verified and filed with the court.

80.     Farber misrepresented and deceived the court and the parties about the nature of the debt by not disclosing in the nonpayment petition that the Chaffees had a Section 8 voucher or that the rent arrears were attributable to the subsidy portion of the rent.

81.     On June 12, 2014, the Chaffees interposed an answer *pro se* denying they owed the rent arrears and stating that they had a Section 8 rental subsidy.

82.     On June 20, 2014, the parties entered into a stipulation adjourning the case to July 30, 2014 at the Chaffees' request to give them an opportunity to seek counsel.

83.     Although Farber filed the petition,  Heiberger appeared on all court dates of counsel to Farber from approximately June 2014 through November 2014.

84.     On or about July 7, 2014, Heiberger made a motion to amend the petition in the nonpayment proceeding which it mailed to the Chaffees.

85.     The motion identified Heiberger as "Attorney Debt Collectors for Petitioner."

86.     As required by 22 NYCRR 130-1.1-a, Ehrlich signed the motion to certify that to the best of his knowledge, after an investigation that was reasonable under the circumstances, the motion was not frivolous.

87.     The motion included a tenant rent ledger as an exhibit which showed the Chaffees' landlord had received Section 8 payments and credited them to the Chaffees' account through at least May 2013.

88.     The exhibit further showed that the Chaffees made payments which covered their full share of the rent every month in which the petition claimed they owed arrears.

89.     Despite the fact that the rent ledger showed that the Chaffees were current in their rent, Ehrlich, appearing for Heiberger acting of counsel to Farber, submitted an affirmation ("Ehrlich Affirmation") in support of the motion asserting that the landlord "has a good and meritorious cause of action, in that the monies claimed in the notice of petition and petition are still due and owing."

90.     In Heiberger's motion and the Ehrlich Affirmation, Heiberger and Ehrlich made false representations to the court that the Chaffees owed the debt and misrepresented the nature of the debt by not disclosing that the Chaffees had a Section 8 voucher and that the arrears resulted from the suspension of their Section 8 subsidy.

91.     Heiberger and Ehrlich knew or should have known that the statements were false through an examination of the rent ledger attached as an exhibit to the Heiberger Motion and referred to in the Ehrlich Affirmation.

92.     On July 21, 2014, Manhattan Legal Services, Inc. ("MLS") appeared for the Chaffees in the nonpayment proceeding.

93.     MLS informed Ehrlich, appearing for Heiberger acting of counsel to Farber in the proceeding, that the Chaffees did not owe any rent arrears; that the rent arrears were caused by the suspension of the Section 8 subsidy for the landlord's failure to comply with the HQS governing the apartment; that the Chaffees were not legally responsible for payment of the Section 8 portion of the rent; and asked that the nonpayment proceeding be discontinued.

94.     Heiberger, appearing by Ehrlich, refused to discontinue the case and the matter was adjourned to September 2014 for MLS to subpoena Section 8 records.

95.     On the adjourned date, Ehrlich personally reviewed the Section 8 records that MLS subpoenaed.

96.     The subpoenaed records confirmed that the Chaffees' Section 8 subsidy had been suspended because of the landlord's failure to correct HQS violations, nonetheless, Heiberger, appearing by Ehrlich and of counsel to Farber, refused to discontinue the proceeding..

97.     The Chaffees filed a motion for summary judgment returnable on October 2, 2014, seeking dismissal of the proceeding because the landlord had failed to state a cause of action.

98.     The Chaffees attached exhibits to their motions which included copies of their cancelled rent checks; the landlord's rent ledger; and the subpoenaed Section 8 records.

99.     Although the cancelled checks, the landlord's own rent ledger, and the Section 8 records proved that the Chaffees did not owe the arrears claimed in the petition, Heiberger, appearing of counsel to Farber, requested multiple adjournments to oppose the motion and to consult with their client.

100.    In or about December 2014, Daniels began appearing on the court case of counsel to Farber instead of Heiberger.

101.    Daniels reviewed the Chaffees' motion for summary judgment and knew or should have known based on documentary evidence attached to the motion that the rent arrears claimed in the petition were not owed.

102.    After Daniels appeared, the parties adjourned the court case several times to discuss settlement, but the settlement negotiations failed.

103.    When Daniels continued to be unwilling to discontinue the case and Farber still had not submitted opposition to the Chaffees' motion for summary judgment after five months of adjournments, the Chaffees' counsel argued the summary judgment motion unopposed on April 27, 2015.

104.    The court granted the Chaffees' motion to the extent of dismissing the landlord's claims.

105.    At no time did the Chaffees owe the debt claimed in the petition.

106.    Farber, Heiberger and Ehrlich made false representations to the court and to the Chaffees that the debt was owed.

107.    All defendants continued to litigate the case against the Chaffees as if it had legal merit long after they had knowledge the Chaffees did not owe the arrears.

108.    Upon information and belief, Farber, Heiberger and Ehrlich intentionally deceived the court about the arrears by verifying and affirming that the Chaffees owed rent arrears when they did not, and by failing to disclose to the court that the Chaffees had a Section 8 voucher and therefore were not responsible for the payment of the full legal rent, but only their share as determined by Section 8.

109. The receipt of court papers threatening the Chaffees with eviction if they did not pay rent arrears they did not owe, as well as the defendants' prolonged litigation of the frivolous nonpayment proceeding, caused the Chaffees emotional distress.

110. Ms. Chaffee experienced increased anxiety, night terrors, difficulty sleeping, increased blood pressure, and heart palpitations.

111. Mr. Chaffee experienced increased stress levels.

112. The Chaffees live on the fourth floor of a walk up building.

113. Ms. Chaffee is mobility impaired due to a heart condition and chronic pain in her knees and hips.

114. It is a severe hardship for her to go to court because going up and down stairs causes her severe pain and she cannot use public transportation.

115. Getting Ms. Chaffee to and from court caused both the Chaffees increased stress and anxiety.

116. The Chaffees also suffered damages in the form of time lost and expenses incurred in having to defend a frivolous lawsuit, including but not limited to, the costs of transportation to court, obtaining and preparing documentary evidence to defend the proceeding and other incidental court expenses.

117. The Chaffees now bring the instant action asserting that defendants violated their rights under the FDCPA, the NYCPA and the NYJL by seeking to collect a debt they knew was not owed, filing and litigating a meritless eviction proceeding against them in housing court and intentionally deceiving the court and the Chaffees by falsely representing that they owed rent arrears and omitting to inform the court that the Chaffees had a Section 8 voucher.

## FIRST CLAIM

### Violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

118.    Plaintiffs restate and incorporate the allegations of paragraphs 1 through 117 as if fully set forth herein.

119.    Defendants Farber, Heiberger, Ehrlich, and Daniels violated the Fair Debt Collection Practices Act.  Defendants' violations include but are not limited to the following:

    a.   Making false, deceptive and misleading representations regarding the amount of rent arrears allegedly owed by the Chaffees and their client's right to collect those arrears in violation of 15 U.S.C. § 1692e;

    b.   Making false representations and implications relating to the character, amount, and legal status of the debt in violation of 15 U.S.C. § 1692e(2);

    c.   Using false representations and deceptive means to collect and attempt to collect any debt in violation of 15 U.S.C. § 1692e(10);

    d.   Using unfair or unconscionable means to collect a debt in violation of 15 U.S.C. § 1692f; and

    e.   Engaging in conduct intended to harass, oppress, or abuse Plaintiffs in the collection of a debt Defendant in violation of 15 U.S.C. § 1692d.

120.    Defendant Farber additionally violated the FDCPA by failing to serve the Chaffees with the notice required by 15 U.S.C. §1692g(a).

121.    As a result of the above violations, defendants Farber, Heiberger, Ehrlich and Daniels respectively are liable to Plaintiffs for statutory damages in an amount to be determined at the time of trial but not less than $1,000.00 per violation, plus actual damages, attorney's fees and cost.

## SECOND CLAIM

### Violation of New York Consumer Protection Statute

122.    Plaintiffs restate and incorporate the allegations of paragraphs 1 through 117 as if fully set forth herein.

123.    New York prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state …" N.Y. General Business Law § 349(a).

124.    Defendants Farber, Heiberger, Ehrlich, and Daniels have used deceptive consumer-oriented acts and practices in the conduct of its business.

125.    Defendants' deceptive practices include but are not limited to:

   a.   False representations that plaintiffs owed rent arrears which were caused by the suspension of their Section 8 subsidy for HQS violations;

   b.   Omitting to indicate in the nonpayment petition that plaintiffs participated in the Section 8 voucher program;

   c.   False representations that plaintiffs owed rent arrears that they did not;

   d.   Failing to exercise due diligence prior to commencing a nonpayment proceeding against plaintiffs.

126.    Defendants' deceptive consumer-oriented acts and practices are misleading to a reasonable consumer in a material way.

127.    Defendants' deceptive consumer-oriented acts and practices have a broad impact on consumers at large, particularly those who are senior citizens, disabled and receive a federal housing subsidy, and cause injury and harm to the public interest.

128.    Defendants committed the above-described acts willfully and/or knowingly.

129.   As a result of defendants' violations of New York's Consumer Protection Act, plaintiffs have suffered compensable harm, including emotional distress.

130.   Plaintiffs accordingly are entitled to an injunction barring defendants from engaging in such deceptive acts and practices, and to recover treble damages or $1,000, costs and attorney's fees.

131.   Because defendants were aware that Peter Chaffee is a senior citizen and disregarded his rights, and because Mr. Chaffee was vulnerable because of his age and suffered emotional damage as a result of Defendants' unlawful conduct, Mr. Chaffee asks the court to assess a supplemental penalty of $10,000.00 against each of the defendants as provided for in GBL §349(c).

### THIRD CLAIM

**Violation of New York Judiciary Law §487**
**(as to Defendants Farber, Heiberger and Ehrlich)**

132.   Plaintiffs restate and incorporate the allegations of paragraphs 1 through 117 as if fully set forth herein.

133.   N.Y. Judiciary Law §487 creates a private right of action against an attorney or counselor who is "guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

134.   Farber violated  N.Y. Judiciary Law §487 by verifying a nonpayment petition which made false representations that plaintiffs owed rent arrears which they did not owe, that failed to state that plaintiffs participated in the federal Section 8 voucher program, that misrepresented plaintiffs' legal monthly rent and that failed to state that rent arrears claimed in the petition were attributable to the Section 8 subsidy portion of the rent.

135.     Heiberger and Ehrlich made false representations in a motion to amend the petition filed with the court that the landlord's cause of action in a nonpayment proceeding was meritorious when the rent ledger attached to the motion as an exhibit showed that plaintiffs were current in their monthly rent.

136.     Upon information and belief, defendants Farber, Heiberger and Ehrlich made these misrepresentations and omissions to deceive the court and plaintiffs.

137.     The deceitful conduct of Farber, Heiberger and Ehrlich violated  N.Y. Jud. Law §487 and caused actual damages to plaintiffs, including incurring expenses to defend a frivolous lawsuit.

138.     Plaintiffs are entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y.J.L. §487.

## DEMAND FOR JURY TRIAL

139.     In accordance with Fed. R. Civ. P. 38(b), plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs prays that the Court:

(a)     Assume jurisdiction of this action;

(b)     Declare that defendants' actions violate 15 U.S.C. §§ 1692c, 1692d, 1692e, 1692f, 1692g  and N.Y. General Business Law § 349;

(c)     Declare that defendants Farber, Heiberger and Ehrlich violated N.Y. Judiciary Law § 487;

(d)     Enjoin defendants from committing similar actions in the future;

(e)     Award plaintiffs compensatory and statutory damages pursuant to 15 U.S.C. §

1692k(a), N.Y. General Business Law §§ 349c and 349h and N.Y. Jud. Law §

487;

(f)     Award costs and attorney's fees to the plaintiffs; and

(g)     Award plaintiffs such other and further relief as may be just and proper.


Dated: June 2, 2015

Respectfully submitted,

MANHATTAN LEGAL SERVICES
By:     Mary McCune (MM 3298)
One West 125th Street, 2nd Floor
New York, New York 10027
(646) 442-3143
mmccune@mls.ls-nyc.org